FILED

2015 Dec-01  AM 11:01
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | | |
|---|---|---|
| ALISA HERALD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CASE NO.: 6:14-CV-01630-LSC |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF OPINION**

## I.    Introduction

The plaintiff, Alisa Herald, appeals from the decision of the Commissioner
of the Social Security Administration ("Commissioner") denying her application
for a period of disability and Supplemental Security Income ("SSI") on June 7,
2011. (Tr. at 133-42, 159.)   Ms. Herald timely pursued and exhausted her
administrative remedies and the decision of the Commissioner is ripe for review
pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Herald was forty-seven years old at the time of the Administrative Law
Judge's ("ALJ's") decision. (Tr. at 34, 44, 159, 201.)  She has obtained her GED
and has no past relevant work. (Tr. at 33, 45-46, 164.)  Ms. Herald claims that she

became disabled on September 1, 2007, due to anxiety, nerve damage to her back and hips, carpal tunnel syndrome, and depression. (Tr. at 45-46, 48-61, 142, 163.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The decision depends on the medical evidence contained in the record. *See Hart v.*

*Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment or combination of impairments does not prevent her from performing her past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find her not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find her disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ found that Ms. Herald meets the non-disability requirements for a period of disability and DIB and was insured through the date of her decision. (Tr. at 19.) She further determined that Ms. Herald has not engaged in SGA since June 7, 2011, the application date. (*Id.*) According to the ALJ, Plaintiff's degenerative disc disease, obesity, carpal tunnel syndrome, major depression, generalized anxiety disorder, right shoulder tendonitis, and hypertension are "severe" based on the requirements set forth in the regulations. (Tr. at 21, Findings No. 2-3.) However, she found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (*Id.*) The ALJ did not find Ms. Herald's allegations to be totally credible, and the ALJ determined that Ms. Herald has the following RFC: the ability to perform a range of sedentary work as defined in 20

C.F.R. § 416.967(a) with a sit-stand option; she cannot work in environments with concentrated exposure to extreme cold and wetness or around unprotected heights; she cannot do any climbing of ladders, ropes or scaffolds; and she can do only occasional climbing of stairs and ramps, kneeling, crouching or crawling. (*Id.*)

According to the ALJ, Ms. Herald has no past relevant work, she was a "younger individual," as that term is defined by the regulations, and she has at least a high school education. (Tr. at 33.)  She determined that "transferability of job skills is not an issue because the [plaintiff] does not have any past relevant work." (*Id.*)  Because Plaintiff cannot perform the full range of sedentary work, the ALJ used Medical-Vocation Rule 201.25 as a guideline for finding that there are a significant number of jobs in the national economy that she is still capable of performing, such as assembler/taper, production/table worker, and surveillance system monitor. (Tr. at 33-34, 64-65.) The ALJ concluded her findings by stating that based on testimony of the vocational expert ("VE"), Plaintiff has not been under a disability, as defined in the Social Security Act, since June 7, 2011. (Tr. at 34, Finding No. 10.)

## II.    Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there

is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). Rather, "the substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III.    Discussion

Ms. Herald alleges that the ALJ's decision should be reversed and remanded for two reasons. First, Plaintiff contends that the ALJ did not properly evaluate the effect of her obesity on her mental RFC. (Doc. 11 at Page 15-18.) Second, Plaintiff contends that the ALJ failed to properly consider her testimony about the effect her carpal tunnel syndrome has on her physical RFC. (Doc. 11 at Page 20-21.)

### A.    Obesity on Plaintiff's Mental RFC

Plaintiff contends that the ALJ failed to properly evaluate the possible effects that her obesity has on her mental RFC. (Doc. 11 at Page 18.) Plaintiff specifically contends that obesity contributed to her depression and that the ALJ did not consider the effect of her obesity on her depression when evaluating her mental RFC. (Doc. 14 at Page 9.)[1] For the following reasons, Plaintiff's argument fails.

---

[1] Plaintiff does not make any argument with regard to the effect of her obesity on her physical RFC.

As an initial matter, while Plaintiff testified at her hearing regarding her weight, Plaintiff did not allege obesity as a basis for her alleged disability or testify that obesity affected her functioning. (Tr. at 45-61, 163). An ALJ is not required to address a condition when the claimant did not allege that she was disabled due to the condition either when she filed her claim or at her hearing. *See Robinson v. Astrue,* 365 F. App'x 993, 995 (11th Cir. 2010); *Street v. Barnhart*, 133 F. App'x 621, 627(11th Cir. 2005).

In any event, a claimant's RFC is the most she can still do despite her limitations and is based on an evaluation of all the relevant evidence. *See* 20 C.F.R. §§ 416.920(e), 416.945(a)(1), (a)(3); Social Security Ruling ("SSR") 96-8p, 61 Fed. Reg. 34,474-1 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 416.946(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 416.927(d)(2) (stating assessment of claimant's RFC is reserved for the Commissioner); *Robinson*, 365 F. App'x at 999 ("the task of determining a claimant's [RFC] and ability to work is within the province of the ALJ, not of doctors"). The ALJ determines a claimant's RFC based on all of the relevant evidence in the case record, including medical history, medical signs and laboratory findings, the effects of treatment, daily

activities, lay evidence, and medical source statements. *See* 20 C.F.R. §

416.945(a)(3); SSR 96-8p.

In this case, after evaluating the entire record, the Court does not agree with

Plaintiff that the ALJ failed to adequately explain how Plaintiff's obesity factored

into her mental RFC determination.   In all social security disability cases, the

plaintiff bears the ultimate burden of proving disability, and is responsible for

furnishing or identifying medical and other evidence regarding her impairments.

*See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Doughty*, 245 F.3d. at 1278; 42

U.S.C. § 423(d)(5) ("[a]n individual shall not be considered to be under a disability

unless he furnishes such medical and other evidence of the existence thereof as the

Commissioner of Social Security may require").   The regulations also establish that

the plaintiff's burden is to provide the relevant medical and other evidence she

believes will prove her alleged disability.   *See* 20 C.F.R. § 404.1512(a) and

(c).   Moreover, the plaintiff's burden is to provide a medical record that is

complete, and if he or she fails to do so, the ALJ will make a decision based on the

evidence of record.   *See* 20 C.F.R. §§ 404.1513(e), 404.1516.

In her hearing, Ms. Herald testified that because of depression she lost

weight, not that obesity attributed to her depression.   (Tr. at 45.) The ALJ

specifically addressed Ms. Herald's testimony in this respect.   (Tr. at 28.)   The

ALJ also discussed Plaintiff's obesity at length, including that Dr. Bowling's March 2008, treatment notes demonstrated Plaintiff weighed 263 pounds and she reported that she was interested in getting her body weight to a healthier weight. (Tr. at 28, 294-295). In April 2008, Dr. Bowling noted that Plaintiff was exercising. (Tr. at 297). Dr. Bowling also prescribed weight loss medication. (Tr. at 28, 298). In April 2009, Dr. Bowling noted Plaintiff "has done well" with losing weight. (Tr. at 327). At that time, Plaintiff was down to 228 pounds. (Tr. at 28, 327). In July 2010, Dr. Terry Bentley, a treating psychiatrist, noted Plaintiff was on a weight loss program and had lost nine pounds. (Tr. at 397). The ALJ also noted Dr. Bowling's March 2011, treatment notes demonstrated Plaintiff lost ten pounds and she was going to continue to augment her weight loss efforts. (Tr. at 372). Thus, the ALJ reasonably concluded that the medical evidence of record demonstrated Plaintiff's effort to lose weight. (Tr. at 28).

Importantly, Plaintiff failed to provide any medical evidence demonstrating that her obesity causes or exacerbates any specific mental limitations.  There does not appear to be any medical evidence where a doctor addressed specific mental limitations that are caused by Plaintiff's obesity.  The record shows no indication by any physician who treated or examined Ms. Herald that obesity affected her mental condition.  (Tr. at 233-391, 411-38, 469-78, 508-09, 547-97.)  The ALJ noted

that Dr. Bentley began treating Plaintiff for depression in 2009, and that Dr. Bentley's assessment primarily reflected no more than mild symptoms with occasional moderate symptoms. (Tr. at 28, 398, 406, 527). The ALJ further noted that Plaintiff's symptoms responded to medication therapy. (Tr. at 28, 400, 526). Plaintiff also reported that her mood was good and she hardly needed Ambien in July 2011. (Tr. at 531). Additionally, while Plaintiff reported a very stressed mood due to various life situations, Dr. Bentley noted she was cooperative, had good eye contact, coherent thought process, good insight/judgment, was oriented times four, and had no memory deficits during her in January 2012, exam. (Tr. at 525).

The ALJ also noted Plaintiff denied anxiety, depression, panic attacks, hallucinations, and paranoia during her October 2012, exam with Dr. Raquib, a treating neurologist. (Tr. 28, 548). The ALJ further noted that Dr. Jerry Gragg, a consultative psychologist, concluded Plaintiff has adequate intellectual functioning to understand, remember, and carry out simple instructions, respond appropriately to supervision and interact effectively with co-workers, and should be able to perform the types of job tasks she has fulfilled in the past in September 2011. (Tr. at 478). Dr. Gragg also concluded Plaintiff would likely have difficulty dealing effectively with work related stresses, but she would likely be more successful in that area, if indeed she were compliant with the medications as prescribed. (Tr. at

478). The aforementioned evidence, as discussed above and by the ALJ, does not indicate that Plaintiff's weight caused mental limitations that the ALJ did not include in her RFC finding.

It appears to the Court that the ALJ reasonably relied on medical evidence in coming to her determination that Ms. Herald's weight did not cause mental limitations not considered and included in her RFC determination. (Tr. at 495.) There must be a showing of prejudice to a disability plaintiff in order for the reviewing court to remand the case to the Commissioner for further development of the record. *See generally Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995). Such prejudice has not been demonstrated in this case. It appears to the Court that the ALJ took appropriate measures required by law in her determination of Ms. Herald's mental RFC and appropriately relied upon statements made by medical professionals and other medical evidence in the record when making her assessment.

**B.    Carpal Tunnel Syndrome on Plaintiff's Physical RFC**

Plaintiff asserts that the ALJ's evaluation of the effect her carpal tunnel syndrome has on her physical RFC was improper. (Doc. 14 at Page 6.) Specifically, Ms. Herald argues that her testimony showed that her carpal tunnel syndrome prevents her from performing fine dexterity skills and that she is unable to sit for

long periods due to back problems. Plaintiff also testified that she is right hand dominant and due to carpal tunnel syndrome, she is unable to use either hand for grasping or gripping, experiences significant edema in her hands and is unable to pick things up, button her clothing or open jars. (Tr. at 50, 54). For the following reasons, Plaintiff's argument fails.

When a claimant attempts to prove disability based on her own subjective complaints, she must provide evidence of an underlying medical condition and either objective medical evidence confirming the severity of her alleged symptoms or evidence establishing that her medical condition could be reasonably expected to give rise to her alleged symptoms. *See* 20 C.F.R. § 416.929(a), (b); SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996); *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). The ALJ is permitted to discredit the plaintiff's subjective testimony of pain and other symptoms if she articulates explicit and adequate reasons for doing so. *Wilson*, 284 F.3d at 1225; *see also Soc. Sec. Rul.* 96-7p, 1996 WL 374186 (1996) ("[T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements."). Although the Eleventh Circuit does not require explicit findings as to credibility, "'the implication must be obvious to the reviewing court.'" *Dyer*, 395 F.3d at 1210

(quoting *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995). "[P]articular phrases or formulations" do not have to be cited in an ALJ's credibility determination, but it cannot be a "broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole." *Id.* (internal quotations omitted).

Here, the ALJ noted that the medical evidence of record failed to support the severity of Plaintiff's claimed limitations pertaining to carpal tunnel syndrome. That determination is supported by the evidence. Plaintiff's physical examinations regarding her carpal tunnel syndrome repeatedly demonstrated unremarkable motor and sensory examinations with full strength and no edema. (Tr. at 514, 518-19, 521, 535.) Specifically, on September 27, 2011, Dr. Raquib found that Ms. Herald's "bilateral carpal syndrome was symptomatically stable." (Tr. at 521.) In January of 2012, Dr. Bowling noted that Plaintiff "moves all extremities well." (Tr. at 251, 535.) The ALJ made note of Ms. Herald's ability to engage in activities, which require fine dexterity, such as playing games on Facebook, talking on the phone, texting, and washing dishes. (Tr. at 27, 179.) Medical records also suggest that she was able to carry out these fine dexterity activities. Specifically, Dr. Raquib advised Plaintiff to refrain from texting as much as possible. (Tr. at 411-28, 432, 513-15.) Further, Dr. Bentley noted that Plaintiff "stays up too late playing games

on Facebook." (Tr. at 393.)  Her ability to engage in such activities suggests that her allegations of disability symptoms resulting from carpal tunnel syndrome were not completely credible. (Tr. at 27, 393, 514-15, 519.) Additionally, medical evidence from Dr. Raquib suggests that Ms. Herald refused carpal tunnel surgery. (Tr. at 513-514, 519.) Based on this evidence, the ALJ reasonably found that Plaintiff's carpal tunnel syndrome could be expected to cause some degree of limitations, and she limited Plaintiff's manipulative actions to no more than frequent use of her right upper extremity for handling, feeling, and fingering movements. (Tr. at 27.) Plaintiff has not demonstrated that carpal tunnel syndrome caused limitations beyond those found by the ALJ.

The evidence of record also does not support Plaintiff's assertion of an inability to sit for prolonged periods. The ALJ noted Plaintiff's December 2010, lumbar MRI only revealed a small right paracentral disc protrusion at Tll-12 and a small central disc protrusion at LS-Sl that was stable without definite associated nerve root impingement. (Tr. at 26, 227). Also, Plaintiff was able to move all extremities well, and had no clubbing, cyanosis or edema during her exam with Dr. Bowling. (Tr. at 26, 535, 540, 543). Additionally, Dr. Raquib noted in October 2012, that Plaintiff's pain level was two, which does not indicate disabling pain. (Tr. at 26, 549). Consequently, the ALJ found while there was sufficient objective

medical evidence to determine that Plaintiff has some degree of degenerative disc disease, the significant limiting effects alleged by Plaintiff were not supported by the medical evidence of record.

It appears to the Court that the ALJ specifically addressed Plaintiff's carpal tunnel syndrome in her RFC finding and in her opinion, and she provided explicit and reasonable reasons for rejecting Plaintiff's testimony and instead relying on medical evidence. The objective medical and other evidence supports the ALJ's conclusion that Plaintiff's carpal tunnel syndrome did not cause completely disabling limitations and instead shows that she could perform a reduced range of sedentary work. (Tr. at 21-25.)

## IV.   Conclusion

Upon review of the administrative record, and considering all of Ms. Herald's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** AND **ORDERED** ON DECEMBER 1, 2015.

_____

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

160704

16